# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROBERT HARTMANN AND CAROL
HARTMANN,
    *Plaintiffs*,

    v.

QBE SPECIALTY INSURANCE
COMPANY,
    *Defendant*.

No. 3:20-cv-01008 (VAB)

## RULING AND ORDER ON MOTION TO AMEND AND MOTION TO DISMISS

On May 13, 2020, Robert Hartmann and Carol Hartmann ("Plaintiffs" or the "Hartmanns") filed a civil complaint in Connecticut Superior Court against QBE Specialty Insurance Company ("QBE" or "Defendant") and Flanagan Associates LLC ("Flanagan"), alleging breach of contract, bad faith, and breach of the covenant of good faith and fair dealing, as well as violations of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. §§ 38a-815 and 38a-816 ("CUIPA"), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a and 42-110b ("CUTPA"). Compl., ECF No. 1-1 (May 13, 2020). The Hartmanns generally allege that QBE, who insured their home, failed to provide coverage allegedly owed under their homeowners' insurance policy after their roof was allegedly damaged in a windstorm. *Id.* ¶¶ 1-9.

On June 18, 2020, Plaintiffs filed a withdrawal in which they dismissed Flanagan from the action. Withdrawal, ECF No. 1-1 (June 18, 2020).

On July 14, 2020, Plaintiffs filed an Amended Complaint. Am. Compl., ECF No. 1-1 (July 14, 2020). The Amended Complaint set forth the same five counts: breach of contract ("Count One," or the "First Count"); bad faith ("Count Two," or the "Second Count"); breach of

the covenant of good faith and fair dealing ("Count Three," or the "Third Count"); and violations of CUIPA ("Count Four," or the "Fourth Count") and CUTPA ("Count Five," or the "Fifth Count"). *See* Am. Compl.

On July 17, 2020, QBE removed the case to this Court on diversity grounds under 28 U.S.C. § 1441(a). Notice of Removal, ECF No. 1 (July 17, 2020).[1]

On July 23, 2020, QBE moved to dismiss Counts Two through Five of the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, ECF No. 10 (July 23, 2020); Def.'s Mem. of L. in Supp. of its Mot. to Dismiss, ECF No. 10-1 (July 23, 2020) ("Mem. Dismiss").

On September 14, 2020, Plaintiffs moved to amend the Amended Complaint. Mot. for Leave to Amend Their Compl., ECF No. 20 (Sept. 14, 2020) ("Mot. to Amend"); Mem. of L. in Supp. of Pls.' Mot. for Leave to Amend Their Compl., ECF No. 20-1 (Sept. 14, 2020) ("Mem. Amend").

On October 5, 2020, QBE objected to Plaintiffs' motion to amend. Mem. of L. in Opp'n to Pls.' Mot. for Leave to Amend Their Compl., ECF No. 21 (Oct. 5, 2020) ("Def.'s Opp'n").

For the following reasons, the Court **GRANTS** Plaintiffs' motion to amend.

As a result, the Court also **DENIES** without prejudice to renewal the pending motion to dismiss, ECF No. 10.

---

[1] Exhibit A to the Notice of Removal, ECF No. 1-1, contains several relevant filings: (1) the original Complaint, located at ECF pages 3-7; (2) the Withdrawal, located at ECF page 12; and (3) the Amended Complaint, located at ECF pages 13-19. Citations to these documents refer to their internal pagination or paragraphs.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Allegations[2]

The Hartmanns allegedly own property in Milford, Connecticut. Am. Compl. ¶ 1.

On or about May 10, 2018, the Hartmanns allegedly "entered into a contract for homeowners' insurance [for the property] with [QBE], bearing policy number CAA HO3 06 0000 2525 02" (the "Policy").[3] *Id.* ¶ 3.

On or about October 18, 2019, the Hartmanns allegedly "suffered significant damage to [their] property as a result of a severe wind and rain storm . . ., causing substantial damage to [their] property." *Id.* ¶ 4.

On or about November 25, 2019, QBE allegedly "denied coverage of [the Hartmanns'] October 18, 2019 claim for damages sustained as a result of the aforementioned storm." *Id.* ¶ 5.

Under the Policy, Plaintiffs allegedly are "entitled to recover their full damages up to the total available coverage for damage to their property, all as more particularly set forth in 'Section 1 – Property Coverages, Coverage A – Dwelling,' of the Policy provided by [QBE]." *Id.* ¶ 6.

Under this section of the Policy, QBE allegedly covered:

> a. The dwelling on the 'residence premises' shown in the Declarations, including structures attached to the dwelling; and
> b. Materials and supplies located on or next to the 'residence premises' used to construct, alter or repair the dwelling or other structures on the 'residence premises[.]'

Policy at 3.

---

[2] The Court sets forth only those facts deemed necessary to an understanding of the issues raised in and decided in this motion.

[3] A copy of the Policy is attached as Exhibit A to Defendants' Motion to Dismiss, ECF No. 10-2 (July 23, 2020), which the Court also refers to as the "Policy" and cites to using its internal pagination. The Court may refer to the Policy as it has been incorporated by reference into the Amended Complaint. *See Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993) (noting that the Court's review on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is limited to "the facts alleged in the pleadings and matters of which judicial notice may be taken" (citations omitted)).

QBE allegedly has "refused, failed and neglected to provide coverage to the [Hartmanns'] damaged property including, but not limited to, damage to the roof, outdoor kitchen, flooring and landscaping," which has "requir[ed] the [Hartmanns] to expend sums of money for the required repairs all of which resulted in a substantial financial loss to the Plaintiff[s]." Am. Compl. ¶ 7.

**B.    Procedural Posture**

On May 13, 2020, Plaintiffs filed the Complaint. Compl.

On June 18, 2020, Plaintiffs filed a Withdrawal removing Flanagan from the case. Withdrawal.

On July 14, 2020, Plaintiffs filed their Amended Complant. Am. Compl.

On July 17, 2020, QBE removed the case to this Court. Notice of Removal.

On July 23, 2020, QBE moved to dismiss the case. Mot. to Dismiss.

On August 10, 2020, Plaintiffs moved for an extension of time until September 13, 2020 to respond to the motion to dismiss. First Mot. for Extension of Time to Respond to Def.'s Mot. to Dismiss (With Consent), ECF No. 12 (Aug. 10, 2020). On August 11, 2020, the Court granted the motion. Order, ECF No. 13 (Aug. 11, 2020).

On September 4, 2020, the Court adopted a pretrial schedule, setting the deadline for joinder of parties and amended pleadings at September 18, 2020 (Plaintiffs) and October 23, 2020 (Defendant); the close of discovery at March 26, 2021; and the deadline for dispositive motions at June 25, 2021. Scheduling Order, ECF No. 15 (Sept. 4, 2020).

On September 14, 2020, Plaintiffs moved to amend their Amended Complaint. Mot. to Amend.

On October 5, 2020, Defendant opposed the motion to amend. Def.'s Opp'n.

On January 19, 2021, the Court decided to address the pending motions based on the parties' written submissions without oral argument on the motion to amend and the motion to dismiss. Order, ECF No. 26 (Jan. 19, 2021).

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998). If a court chooses to deny leave to amend, however, it must give some "justifying reason" for doing so. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer

the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks omitted)). A court will "only deny a motion to amend if it is clear on the face of the pleadings that the claims would be barred by the statute of limitations, and if the issue would not need to be more fully briefed." *Hybrid Athletics, LLC v. Hylete, LLC*, No. 3:17-cv-1767, 2018 WL 4323816, at *4 (D. Conn. Sept. 10, 2018).

"While the party seeking to amend its pleading must explain any delay, the party opposing the amendment 'bears the burden of showing prejudice, bad faith, and futility of the amendment.'" *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 766 (S.D.N.Y. 2018) (quoting *Grant v. Citibank (S.D.), N.A.*, No. 10 Civ. 2955 (KNF), 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010)).

## III.   DISCUSSION

Plaintiffs seek to amend their Complaint to "(1) withdraw the Third, Fourth, and Fifth Counts"; "(2) more fully state the grounds of their bad faith claim currently alleged in the Second Count in response to the Motion to Dismiss filed by [QBE]"; and "(3) reorganize and restate all allegations, including those in the First Count, that precede the Second Count." Mem. Amend at 1. Plaintiffs seek to withdraw the Third, Fourth and Fifth Counts without prejudice, but state that QBE, with whom Plaintiffs conferred regarding the motion, "does not agree" that withdrawal of the Fourth and Fifth Counts "should be without prejudice."[4] *Id.* at 2-3. Plaintiffs represent that the proposed Second Amended Complaint would "supersede the [Amended Complaint] entirely." *Id.*

---

[4] QBE does not address the Third, Fourth or Fifth Counts in its opposition to the motion to amend, but rather objects only "to so much of [P]laintiffs' Motion for Leave to Amend Their Complaint that seeks to more fully state the grounds of their bad faith claim currently alleged in the Second Count in response to the Motion to Dismiss filed by QBE." Def.'s Opp'n at 1.

With respect to its amendment of Count Two, the bad faith claim, Plaintiffs seek to "fully set forth the factual allegations supporting their bad faith claim," and "specifically seek to supplement the Second Count with particularized allegations clarifying the chronology and significance of events from which QBE's bad faith motive is plausibly inferred." *Id.* at 3.

QBE objects "on the ground that the amendment sought is futile, as the Second Count of the proposed Amended Complaint still fails to state a claim upon which relief can be granted." Def.'s Opp'n at 1.

The Court thus turns to the bad faith claim set forth in Count Two of the proposed Amended Complaint.

"Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433 (2004). "Bad faith means more than mere negligence; it involves a dishonest purpose." *Id.* In the insurance context, the threshold for a bad faith claim is wrongful denial. *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 798 (2013) (concluding that "bad faith is not actionable apart from a wrongful denial of a benefit under the policy"). "If the plaintiff fails to set forth factual allegations that the defendant acted in bad faith, a claim for the breach of the implied covenant will not lie," *TD Bank, N.A. v. J and M Holdings, LLC*, 143 Conn. App. 340, 349 (2013) (quoting *Blumberg Assocs. Worldwide, Inc. v. Brown & Brown of Conn., Inc.*, 132 Conn. App. 85, 99 (2011)).

The proposed Amended Complaint sets forth the following allegations as they pertain to Count Two. Proposed Am. Compl., ECF No. 20-2 (Sept. 14, 2020) ("Proposed Am. Compl.").

On or about October 22, 2019, Cedar Solutions CT ("Cedar Solutions"), "a roofing contractor hired by Plaintiffs . . ., [allegedly] conducted a physical inspection of the roof and related damage to (a) determine the cost of the damage and (b) estimate the costs of repairs." *Id.* ¶ 10. Cedar Solutions allegedly determined that the storm caused the damage to the Hartmanns' roof and that repairing the damage would cost "in excess of $100,000." *Id.*

On or about October 29, 2019, Plaintiffs allegedly "provided QBE with the findings and estimated cost of repairs from Cedar Solutions." *Id.* ¶ 11.

On November 11, 2019, "QBE's adjuster [allegedly] conducted a cursory evaluation of the roof by way of drone flight and an inspection of the interior of the residence." *Id.* ¶ 28. QBE's adjuster allegedly "took several photographs of the roof (from the drone) and of shingles that were blown to the ground by the storm," but allegedly "did not physically inspect any portion of the roof exterior." *Id.*

On November 14, 2019, QBE allegedly "improperly denied the claim . . . on the basis that the roof damages were caused by 'wear and tear.'" *Id.* ¶ 29. QBE allegedly "reached this determination despite knowledge of the findings from Cedar Solutions that the damages were caused by the [s]torm and despite having photographs of shingles blown off the roof by the [s]torm." *Id.*

The Hartmanns allege that "QBE's improper denial of the claim was preceded by a deliberately deficient investigation of the loss," and that "QBE knew or should have known that any proper investigation of the loss would have revealed that at least some portion of the roof damage was the result of 'direct physical loss' caused by the [s]torm." *Id.* ¶ 30 (emphasis omitted). They allege further that "QBE also knew or should have known . . . that its obligation to provide coverage . . . under the Policy likely would require QBE to provide coverage for

undamaged portions of the roof" and "to replace and repair the roof in a manner to 'conform to a reasonably uniform appearance.'" *Id.* ¶ 31. They allege that "QBE thus was incentivized to remain purposely ignorant of facts that might compel a determination that coverage should be provided for any portion of the roof damage," and allegedly "followed this incentive with the intent of depriving Plaintiffs of benefits mandated by the insurance contract," including "coverage for direct physical loss to the residence." *Id.* ¶ 32.

The Hartmanns allege further that "despite receipt of an inspection report from Cedar Solutions concluding that the roof damage resulted from direct physical loss caused by the [s]torm, QBE chose to stand on the findings of its own purposely deficient investigation to determine that the wear and tear caused the loss." *Id.* ¶ 33. They allege that "QBE's decision to ignore the shingles blown off the roof . . . smacks of an improper motive to deprive Plaintiffs of coverage under the Policy," *id.* ¶ 33, and that "QBE [allegedly] acted with a dishonest purpose when it intentionally conducted a deficient investigation to remain ignorant of facts that would compel it determine that any portion of the roof damage was covered by the Policy," *id.* ¶ 34.

QBE argues that the Hartmanns' bad faith theory is "entirely speculative and not grounded in fact," as the Second Count in the proposed Amended Complaint effectively boils down to allegations that "a contractor[] hired by [P]laintiffs concluded the roof of the [p]roperty was damaged by the [storm][,] while a contractor hired by QBE concluded that the condition of the roof resulted from wear and tear." Def.'s Opp'n at 4. In Defendant's view, such a "disagreement between contractors . . . does not support an inference of fraud, deception, or a conscious wrongdoing with dishonest purpose or sinister motive." *Id.*

The Court disagrees.

Even if such a "disagreement between contractors" could not support an inference of fraud, a conclusion the Court need not, and does not, now reach, Defendant's characterization of Plaintiffs' proposed Second Count omits the core of Plaintiffs' allegation: that "QBE deliberately engaged in a deficient investigation of the loss to avoid a determination that the Policy should cover any portion of the roof damage." Mem. Amend at 8. The Hartmanns allege that QBE conducted this "deliberately deficient investigation" and allegedly issued an "improper denial of the claim" not only in the face of the Cedar Solutions findings, but also despite "photographs of shingles blown off the roof by the [s]torm." Proposed Am. Compl. ¶¶ 29, 30. In the proposed Amended Complaint, Plaintiffs have alleged that QBE's examination was "cursory" and absent "physical[] inspect[ion]," *id.* ¶ 28; that QBE was "incentivized to remain purposely ignorant of facts that might compel a determination that coverage should be provided for any portion of the roof damage," *id.* ¶ 32; and that QBE's alleged decision to "intentionally conduct[] a deficient investigation" was done "with a dishonest purpose," or its desire to "evade the spirit of the contract and its likely obligations" under Connecticut law, *id.* ¶ 34.

The Hartmanns' claims therefore plausibly allege that QBE issued a "wrongful denial" under the Policy, *Capstone Bldg. Corp.*, 308 Conn. at 798, not "by an honest mistake," but rather with a "dishonest purpose," *De La Concha of Hartford, Inc.*, 269 Conn. at 433. Accordingly, the Second Count of the proposed Amended Complaint is not futile.

As Defendant offers no other objections to Plaintiffs' motion to amend,[5] and it appears that, given the early stage of the proceeding, Defendant will not be "prejudiced by the proposed

---

[5] To the extent Defendant wishes to make or renew the argument that the Fourth and Fifth Counts should be dismissed with prejudice, as described in Plaintiffs' memorandum in support of their motion to amend, *see* Mem. Amend at 2-3, the Court concludes, relying on its "considerable discretion in deciding whether to allow a withdrawal of a claim without prejudice," *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 114 (2d Cir, 1985), that, given the early stage of the proceeding, QBE will not be prejudiced by the withdrawal of these claims without prejudice, and therefore allows Plaintiffs to withdraw these claims without prejudice, *see id.* ("In general, the court may allow such a dismissal if the

amendment," *Roller Bearing Co. of Am. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008), the Court therefore will grant Plaintiff's motion to amend in its entirety.

## IV.     CONCLUSION

For the reasons above, the Court **GRANTS** Plaintiffs' motion to amend.

As a result, the Court also **DENIES** without prejudice to renewal QBE's pending motion to dismiss.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of January, 2021.

  /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

defendant will not be prejudiced thereby, and should consider the defendant's effort and expense in defending the action as well as the plaintiff's reasons for needing such a dismissal." (citations omitted)).